WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Melvin Larson, | No. CV-14-00924-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| GEICO General Insurance Company, et al., | |
| Defendants. | |

Plaintiff Gregory Larson has filed a motion for partial summary judgment regarding the offset Defendant GEICO General Insurance Company (GEICO) may receive in connection with an underinsured motorist (UIM) claim. Doc. 15. The motion is fully briefed and the Court heard oral argument on October 10, 2014. For the reasons that follow, the Court will grant Plaintiff's motion.[1]

**I.     Background.**

Plaintiff suffered serious and permanent injuries in a motor vehicle accident caused by Barrett Lavon Dempster, an underinsured motorist. Doc. 1-1 at 3. Before the accident, Dempster consumed alcohol at a nearby golf course. *Id*. While driving intoxicated, Dempster forced Plaintiff's vehicle off the roadway and into a light pole. *Id*.

---

[1] Plaintiff suggests that this is not properly deemed a motion for summary judgment because it addresses only an issue of law. Doc. 15 at 2 n.1. Rule 56(a), however, permits the Court to enter summary judgment not only on a claim or defense, but also on "part" of a claim or defense. The Court views its resolution of this legal issue, which is part of a defense in this case, as appropriate under Rule 56.

Dempster had motor vehicle liability insurance with limits of $25,000 applicable to Plaintiff's claim. *Id*. Plaintiff had automobile insurance issued by GEICO, which provided UIM coverage of $250,000 per person. *Id*. The golf course was insured through a general liability insurance policy with a limit of $1,000,000. *Id*. at 4.

Plaintiff pursued negligence claims against Dempster and the golf course in state court. *Id*. at 3-4. Plaintiff eventually settled with Dempster for his policy limits of $25,000 (*id*. at 4) and with the golf course for $60,000 (Doc 18 at 7). After settling the negligence claims, Plaintiff presented his UIM claim to GEICO. Doc. 1-1 at 6. Plaintiff alleges GEICO refused to compensate him for his injuries. Doc. 1-1 at 4.

Plaintiff originally brought this action for declaratory relief in Maricopa County Superior Court. Plaintiff alleged breach of contract and bad faith against GEICO for refusing to pay Plaintiff his entire UIM policy limit of $250,000. Doc. 1. GEICO removed the case to this Court, and Plaintiff now moves for partial summary judgment, arguing that A.R.S. § 20-259.01 and GEICO's UIM policy prevent GEICO from offsetting the golf course settlement against the UIM coverage. Doc. 15.

**II.   Analysis.**

In diversity cases, state substantive law supplies the rule of decision. *See* 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). A federal court interpreting state law is bound by decisions of the state's highest court. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994). Where the state supreme court has not yet ruled on the issues, federal courts must determine how the state supreme court would decide based on lower court opinions, statutes, and treatises. *Id*.

**A.   Relevant Statutes.**

Arizona has adopted the Uninsured/Underinsured Motorist Act (UMA), A.R.S. § 20–259.01. Under the UMA, every insurer writing motor vehicle liability policies in Arizona must offer UIM coverage and must include such coverage in a policy at the request of the insured. A.R.S. § 20-259.01(B). The parties disagree on the meaning of § 20-259.01(G). Plaintiff asserts that the only reasonable interpretation of this provision

prevents UIM insurers from deducting a non-motorist tortfeasor's insurance policy liability limits or settlement amounts from UIM coverage. Doc. 15 at 3. GEICO argues that it may offset all liability payments Plaintiff has received for injuries and damages related to the accident, including the $60,000 settlement from the golf course. Doc. 17 at 1.

The statutory provision at issue provides this definition:

> "Underinsured motorist coverage" includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, the underinsured motorist coverage provided in subsection B of this section is applicable to the difference.

A.R.S. § 20-259.01(G).

Plaintiff argues that the "limits of . . . liability insurance policies" referred to in this section refers solely to insurance policies of underinsured motorists. Plaintiff argues that the statute is silent as to insurance policies for non-motorist tortfeasors, and that non-motorist insurance policies should therefore not be considered when determining UIM coverage. Doc. 15 at 4. GEICO argues that "the sum of the limits of liability under all . . . liability insurance policies" clearly includes all liability insurance policies at the time of the accident, including policies of non-motorist tortfeasors. Doc. 17 at 3.

The Court finds the statute ambiguous. On one hand, the provision at issue defines "underinsured motorist" coverage, suggesting that the provision concerns the insurance – or, more precisely, the underinsurance – of "motorists," not other tortfeasors. On the other hand, the statue states that UIM coverage applies only if the sum of liability limits under "all" liability insurance policies applicable at the time of the accident is less than the total damages.

When interpreting statutes under Arizona law, the Court must determine and give effect to legislative intent. *Calvert v. Farmers Ins. Co. of Ariz*, 697 P.2d 684, 687 (Ariz.

1985); *see also Phoenix Title & Trust Co. v. Burns*, 395 P.2d 532, 533 (Ariz. 1964). The Court must consider the policy behind the statute. *Cohen v. State*, 588 P.2d 299, 302 (Ariz. 1978). The Court must also consider the words, context, subject matter, and effects and consequences of the statute. *Calvert*, 144 Ariz. at 294.

But this is not all. The Court must also consider other Arizona statutes that bear on the subject. "The general rule is that the court may look to prior and contemporaneous statutes in construing the meaning of a statute which is uncertain and on its face susceptible to more than one interpretation. If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent." *State ex rel. Larson v. Farley*, 471 P.2d 731, 734 (Ariz. 1970). The UMA is not the only relevant statute in this case.

Arizona has also adopted A.R.S. § 12-2506, which abolishes joint and several liability in most tort cases, requires fact finders to allocate fault among all tortfeasors responsible for the loss, and limits a plaintiff's recovery against a particular tortfeasor to that tortfeasor's allocated share of the damages.[2] The relevant provision of § 12-2506 states:

> In an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, except as otherwise provided in this section. Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be entered against the defendant for that amount. To determine the amount of judgment to be entered against each defendant, the trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's fault, and that amount is the maximum recoverable against the defendant.

A.R.S. § 12-2506(A). Thus, under current Arizona law, one tortfeasor cannot be required to pay for damages allocated to another tortfeasor. Nor can a tortfeasor reduce its

---

[2] Section 12-2506 preserves joint and several liability in a few narrow classes of cases: when tortfeasors act in concert, when one is an agent or servant of the other, and when a defendant's liability for the fault of another arises out of a duty created by a federal employers' liability statute. A.R.S. § 12-2506(D). GEICO does not contend that any of these exceptions applies to Plaintiff's claims against Dempster and the golf course.

- 4 -

liability by payments made by other tortfeasors. *See Jamerson v. Quintero*, 313 P.3d 532, 534 (Ariz. Ct. App. 2013) ("a settlement with one defendant necessarily does not affect the liability of another"); *Roland v. Bernstein*, 828 P.2d 1237, 1239 (Ariz. Ct. App. 1991) (under § 12-2506, non-settling tortfeasor not entitled to reduce his liability by amounts paid in settlement by other tortfeasors).[3]

### B.     Statutory Interpretation.

The Court begins its analysis by examining the language of the statute at issue – in this case, § 20-259.01(G) of the UMA. That provision defines "underinsured motorist coverage," making clear that the concern is with "underinsured motorists," not "underinsured tortfeasors." If the rest of the provision is read with this focus in mind, the phrase "limits of liability under all bodily injury or death liability bonds and liability insurance policies" can be read to mean bonds and policies of underinsured motorists.

As noted above, it is possible to read § 20-259.01(G) as applying more broadly to all insurance policies that might be at issue after an accident, including the policies of tortfeasors other than the underinsured motorist, but the Court finds the narrower reading to be more consistent with the focus and intent of the UMA. Further, the narrower reading becomes particularly compelling when the effects of § 12-2506 are considered.

A hypothetical situation will help explain the Court's reasoning. If Plaintiff's damages in this case totaled $300,000 and Plaintiff sought recovery of his losses against Dempster and the golf course, § 12-2506 would require the fact finder to apportion fault between Dempster and the golf course. If, hypothetically, the fact finder allocated 90% of the fault to Dempster and 10% of the fault to the golf course, Plaintiff could recover a maximum of $270,000 from Dempster (90% of Plaintiff's injuries) and $30,000 from the

---

[3] A.R.S. § 12-2504 provides that a settlement by one tortfeasor "reduces the claim" against other tortfeasors, but this statute was enacted before § 12-2506 and applies only to those few cases where joint and several liability continues to exist under § 12-2506. *Jamerson*, 313 P.3d at 534 ("a settlement with one defendant necessarily does not affect the liability of another, so § 12-2504 is irrelevant. The fact that the legislature did not amend or repeal § 12-2504 when it all but abolished joint-and-several liability in 1987 must mean the statute still applies in the handful of remaining situations in which liability is joint.") (citation omitted).

golf course (10% of Plaintiff's injuries). Because joint and several liability has been abolished by § 12-2506, Plaintiff could not recover any portion of the $270,000 attributed to Dempster from the golf course. A.R.S. § 12-2506(A); *State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 172 P.3d 410 (Ariz. 2007) (§ 12-2506 "establishes a system of comparative fault, making 'each tortfeasors responsible for paying his or her percentage of fault *and no more*.'") (quoting *Dietz v. Gen. Elec. Co.*, 821 P.2d 166, 171 (Ariz. 1991)) (emphasis in original). Nor could Dempster reduce his liability by any amounts paid by the golf course, even if the golf course paid amounts in excess of its $30,000 liability. *Jamerson*, 313 P.3d at 534 ("a settlement with one defendant necessarily does not affect the liability of another"); *Roland*, 828 P.2d at 1239 (under § 12-2506, non-settling tortfeasor not entitled to reduce his liability by amounts paid in settlement by other tortfeasors).

Thus, under Arizona law, the amount that Dempster would owe Plaintiff, and the amount which Plaintiff could recover from GEICO if Dempster lacked the resources and insurance to pay in full, would be $270,000. Because the UMA speaks only of "underinsured motorist coverage," GEICO would not be liable to Plaintiff under the UIM policy for any damages caused by the golf course. The golf course is not an "underinsured motorist." *See Uhrhammer v. State Farm Mut. Auto. Ins. Co.*, 808 P.2d 1260 (Ariz. Ct. App. 1991) (holding that the plaintiff was not entitled to UIM recovery for accident with a horse because a horse is not an underinsured motorist). And if GEICO could not be held responsible for any portion of the golf course's liability, it is only fair that GEICO not be permitted to offset any payment from the golf course against Dempster's liability.

The correctness of this conclusion is reinforced by arguments made in GEICO's own brief. GEICO asserts that "[u]nderinsured motorist coverage is intended to put the insured in the same position he or she would have been in if the motorist who caused the plaintiff's injury had been adequately insured[.]" Doc. 17 at 6 (quoting 26 Causes of Action 1). Under § 12-2506, because liability is individual and not joint, Dempster could

not reduce his liability to Plaintiff by the amounts paid by the golf course; he would be liable for the full $270,000 caused by his fault.  Thus, if the purpose of GEICO's UIM coverage is to put Plaintiff in the same position he would have been in had Dempster owned adequate insurance coverage, Plaintiff must recover the damages caused by Dempster without regard to any amount paid by the golf course.

Similarly, GEICO's brief states that "[t]he UIM insurer steps into the shoes of the underinsured driver to provide . . . complete recovery." Doc. 17 at 4 (quoting *State Farm Mut. Ins. Co. v. Errington*, 963 P.2d 334, 338 (Ariz. Ct. App. 1998)).  If GEICO steps into the shoes of Dempster to provide a complete recovery to Plaintiff, GEICO must pay the full amount owed by Dempster (less any amounts paid by Dempster's insurance) without regard to amounts paid by or on behalf of the golf course.  Dempster could not reduce his liability to Plaintiff by the amounts paid by the golf course, and GEICO, which under its own brief steps into Dempster's shoes, cannot do so either.

To reach a contrary conclusion would be to ignore § 12-2506, the Arizona statute that defines the parties' respective liabilities in the underlying tort case.  The Court cannot do so for two reasons.  First, GEICO's insurance policy in this case specifically states that it is governed by Arizona law.  Doc. 15-1 at 20.  Second, as noted above, the Court must interpret the UMA in the context of and consistently with other relevant Arizona statutes. *See State ex rel. Larson v. Farley*, 471 P.2d at 734; *Pima Cnty. by City of Tucson v. Maya Constr. Co.*, 761 P.2d 1055, 1059 (Ariz. 1988) ("if it is reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent").

Adopting GEICO's interpretation of the UMA would also produce clearly inequitable results – results that could not have been intended by the Arizona Legislature.  For example, under § 20-259.01(G), UIM coverage is reduced by "the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies[.]"  It is the "limits of liability," not the amounts actually paid, that reduce the UIM coverage obligation.  In this case, Dempster had $25,000 of insurance and the golf

course had $1,000,000. If GEICO's reading of the UMA were to be adopted, the golf course's $1,000,000 limit of liability would be used to reduce the UIM coverage. It would effectively eliminate the UIM coverage. And this would be true even though the golf course could not be held legally responsible under § 12-2506 for anything more than the portion of damages allocated to it by the fact finder. In the hypothetical above, the golf course could not be responsible for more than $30,000 of Plaintiff's $300,000 in damages, but GEICO's reading of the UMA would permit GEICO to offset the entire $1,000,000 limit of the golf course's insurance policy, wiping out any UIM recovery by Plaintiff. Such a result would not protect Plaintiff against Dempster's underinsured status, would not put Plaintiff in the position he would have been in had Dempster been fully insured, and would therefore defeat the purpose of the UMA.

GEICO's reading would make sense in a joint and several liability state where the plaintiff could recover the full amount of his damages from the golf course even though the golf course was only partially responsible for the loss. In such a state, the golf course's $1,000,000 liability policy would be on the hook for all damages suffered by the plaintiff, and using its policy limits as the offset number would be much more equitable. But where joint and several liability has been abolished and the golf course's liability is limited to its allocated portion of the fault, offsetting the full amount of its policy limits would produce a clearly inequitable result and defeat the purpose of the UMA.

Given the governing tort law in Arizona as established by § 12-2506, the Court concludes that the only reasonable reading of § 20-259.01(G) is that the liability policies referred to, and for which GEICO can receive an offset, are policies of the underinsured motorist, not those of other tortfeasors.

This conclusion is supported by the purpose of the UMA. The Arizona Supreme Court has stated repeatedly that the UMA is remedial in nature and must be construed liberally in favor of UIM coverage. For example, the Supreme Court has "clearly found [that] the legislature clearly intended a broad application of UIM coverage to provide benefits up to the policy limits whenever the insured is not indemnified fully by the

available limits of liability." *Taylor v. Travelers Indem. Co. of Am.,* 9 P.3d 1049, 1054 (Ariz. 2000); *see also Shultz v. Farmers Ins. Group*, 805 P.2d 381, 383 (Ariz. 1991) ("We have previously determined that A.R.S. § 20-259.01 is intended to require, when possible, *full* indemnification of insured victims who have accidents with uninsured or underinsured motorists.") (emphasis in original). As explained above, the Court's reading of the § 20-259.01(G) offset as limited to policies of the underinsured motorist provides insureds the benefits of the UIM policy limits and requires their full indemnification.

During oral argument, defense counsel drew the Court's attention to a case from the federal district court in Hawaii, *GEICO v. Dizol*, 176 F.Supp.2d 1005 (D. Haw. 2001). *Dizol* is factually similar to this case, and held that the UIM carrier was entitled to offset the full $1,000,000 of liability policy limits carried by the bar that sold liquor to the driver who caused the plaintiff's injuries. But *Dizol* was applying Hawaii law, and that law recognizes joint and several liability. As *Dizol* itself explains, policy limits of the bar's liability carrier could be counted as an offset against the UIM coverage because the bar and similarly situated entities, "as joint tortfeasors[,] are jointly and severally liable for the victim's damages." *Id*. at 1031. As discussed above, offsetting the full amount of the bar's liability policy makes sense when that policy is on the hook – through principles of joint and several liability – for all damages suffered by the plaintiff including those caused by the underinsured driver. But where a state has abolished joint and several liability and the plaintiff cannot recover any portion of the underinsured driver's damages from the bar or its carrier, the result must be the opposite for reasons explained above.

GEICO complains that the Court's ruling will permit Plaintiff to obtain more than his actual damages. For example, using the hypothetical above, if the golf course is liable only for $30,000 (10% of $300,000) and the plaintiff receives a settlement payment from the golf course of $60,000, none of which can be offset against the UIM coverage, then the plaintiff will receive a windfall. He will recover a total of $330,000 ($270,000 allocated to Dempster plus the $60,000 received from the golf course), which exceeds his

actual damages by $30,000. This may be true, but it is a result permitted by § 12-2506. If the plaintiff in our hypothetical case settled with the golf course for $60,000, went to trial against Dempster, and received a judgment of 90% fault and $300,000 in damages, Plaintiff could recover $270,000 from Dempster notwithstanding his $60,000 settlement with the golf course. Plaintiff's favorable settlement would result in his receiving a total recovery of $330,000 – more than his damages of $300,000. But the opposite is also true. If Plaintiff settled with the golf course for $60,000 and the jury at trial assigned the golf course 30% of the fault rather than 10%, resulting in Dempster receiving only 70% of the fault, Plaintiff's recovery from Dempster would be limited to $210,000 (70% of $300,000) and Plaintiff would recover a total of only $270,000 from Dempster and the golf course. Plaintiff would be undercompensated by $30,000 because of the settlement he made with the golf course. Thus, § 12-2506 visits the consequences of both favorable and unfavorable settlements on Plaintiff, and leaves Dempster and the UIM carrier responsible only for the loss caused by Dempster. *See Roland*, 828 P.2d at 1239 ("we believe that it would be anomalous to give the benefit of an advantageous settlement, not to the plaintiff who negotiated it, but to the non-settling tortfeasor. Had plaintiff made a disadvantageous settlement, she would have borne that consequence[.]"). The Court cannot conclude that a result clearly permitted by § 12-2506 is contrary to Arizona law.

### C. GEICO's Policy Language.

GEICO's policy language reinforces the Court's conclusion. The policy contains the following language regarding GEICO's UIM coverage obligation: "We will pay damages which the insured is *legally entitled to recover* from the owner or operator of an underinsured motor vehicle because of bodily injury." Doc. 15-1 at 23 (emphasis added). GEICO obligates itself by this language to cover only amounts that Plaintiff would be "legally entitled to recover" from Dempster. Returning again to our hypothetical, under § 12-2506, Plaintiff would be "legally entitled to recover" only $270,000 from Dempster, not the additional $30,000 of loss caused by the golf course. Thus, under the plain language of its policy, GEICO would be responsible only for $270,000 less the limits of

Dempster's liability coverage. Because it would have no responsibility for damages assigned to the golf course, GEICO should not be able to reduce its UIM obligation by any insurance policy owned by the golf course.[4]

GEICO points to later language in its policy that appears in the section titled "Limit of Liability." Doc. 15-1 at 23. But this section is a limitation on the liability set forth above, which itself is limited to "damages which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle." Thus, any offset allowed in the "Limit of Liability" section would, under the policy's language, reduce the amount GEICO must pay solely for Dempster-caused losses.

The language which GEICO emphasizes in the "Limit of Liability" section states that "damages payable under this coverage will be reduced by all amounts . . . [p]aid by or for all persons or organizations liable for the injury[.]" *Id*. GEICO argues that this language is broad enough to encompass the golf course's $60,000 settlement payment. If the language were read to provide such an offset, it would be clearly unfair and unenforceable. It would be unfair because it would permit GEICO to receive credit for amounts paid by the golf course even though GEICO's policy makes it liable only for losses caused by Dempster. And it would be unenforceable because it would be contrary to the Court's interpretation of § 20-259.01. GEICO cannot broaden the offset allowed by the UMA through generous language in its own policy.

Moreover, this policy language applies only "[t]o the extent that the insured is not deprived of full compensation for the loss[.]" *Id*. If an insurer were able to obtain an offset for the full insurance coverage possessed by a relatively minor contributor to an injury, despite the fact that the injured person could never obtain the full amount of the insurance policy under § 12-2506, then the insured clearly would be "deprived of full compensation for the loss." The policy language itself thus precludes GEICO's offset of

---

[4] During oral argument, GEICO's counsel disavowed this policy language and asserted that GEICO would be liable for the full amount of Plaintiff's damages, regardless of any fault attributed to the golf course. Such a position, apparently taken for tactical purposes in this litigation, is inconsistent with Arizona law, plainly contrary to the language of GEICO's insurance policy, and not controlling.

- 11 -

amount paid on behalf of the golf course.

Arizona cases that permit insurers to offset UIM benefits in order to prevent double recovery are not inconsistent with this conclusion. *Hamill v. Mid-Century Ins. Co.*, 238 P.3d 654, 656 (Ariz. Ct. App. 2010); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 963 P.2d 334, 339 (Ariz. Ct. App. 1998) ("We do not believe the legislature sought to preclude insurers from contractually eliminating double recovery."). Neither *Hamill* nor *Arrington* involves an insurer offsetting a non-motorist tortfeasor's limits of liability from UIM coverage. Moreover, in *Hamill*, the injured plaintiff had already been fully compensated for his injuries, yet sought UIM benefits from his own insurer in excess of his actual damages. *Hamill*, 238 P.3d at 655-656. Similarly, in *Arrington*, the injured plaintiffs had already received full compensation for their damages, but sought duplicate UIM benefits. *Arrington*, 963 P.2d at 339-340. Plaintiff in this case has not received full compensation for his injuries.

### III. Conclusion.

Upon considering the words of the UMA and the purpose and effect of the statute, particularly in light of § 12-2506, the Court concludes that § 20-259.01(G) permits an offset only for liability insurance that covers the uninsured motorist – Dempster – and not liability insurance that covers other tortfeasors such as the golf course. The Court also concludes that GEICO's policy is not to the contrary and, to the extent it can be read as requiring a different result, it is unenforceable under the UMA.

**IT IS ORDERED** that Plaintiff's motion for partial summary judgment (Doc. 15) is **granted**.

Dated this 21st day of October, 2014.

David G. Campbell
United States District Judge